## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No.: 2:23-cv-110 |
| v. | **COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |
| Portfolio Recovery Associates, LLC, | |
| Defendant. | |

The Consumer Financial Protection Bureau (Bureau) brings this action against Portfolio Recovery Associates, LLC (PRA) and alleges the following:

### INTRODUCTION

1.     PRA is a debt collector whose principal purpose is the collection of debts. PRA also furnishes consumer information to consumer-reporting agencies (CRAs).

2.     PRA collected millions of dollars using illegal debt-collection practices and engaged in unlawful credit-reporting practices that have impacted at least hundreds of thousands of consumers.

3.     This is the second enforcement action that the Bureau has brought against PRA. In the first, the Bureau found that PRA violated multiple provisions of "Federal consumer financial law," including the Consumer Financial Protection Act of 2010 (CFPA) and the Fair Debt Collection Practices Act (FDCPA), through its debt-purchase and collection practices. The Bureau resolved those findings through an order, to which PRA consented, issued on September 9, 2015 in *In re Portfolio Recovery Associates,*

*LLC* (Administrative Proceeding File No. 2015-CFPB-0023) (the Order). The Order required PRA to abide by certain conduct provisions.

4.    Since the Order went into effect, PRA's debt-collection practices have violated numerous Order provisions, along with the CFPA and the FDCPA. PRA collected on at least tens of thousands of debts that consumers disputed even though PRA did not take the required steps to substantiate the accuracy and validity of those debts. PRA collected on numerous debts without informing consumers the debts were too old to legally enforce or report to a CRA. When notifying consumers that they could be sued, PRA failed to offer to provide consumers with certain required documents. On hundreds of occasions, PRA failed to timely provide the documents it did offer. PRA's failure to offer and timely supply the requisite documents likely affected consumers' decision-making about whether to pay allegedly outstanding debts. And PRA sued thousands of consumers when it lacked proper documentation about the debt, and at times sued on debts that were too old.

5.    Through these illegal practices, PRA collected millions of dollars from consumers.

6.    Because inaccurate reporting can negatively affect a consumer's financial opportunities, the Fair Credit Reporting Act (FCRA) and its implementing Regulation V require furnishers like PRA to promptly and adequately respond when a consumer disputes the accuracy of a debt. In violation of these requirements, PRA failed on numerous occasions to timely respond or reasonably investigate when consumers disputed debts. For a period, PRA's operations for processing and recording Direct Disputes were insufficient, resulting in thousands of disputes being ignored for months. On at least tens of thousands of additional occasions, PRA did not timely investigate and

resolve Direct Disputes or timely notify consumers when it would not investigate because it believed the disputes were frivolous. And on numerous occasions, PRA conducted inadequate investigations of fraud and identity theft disputes. Consumers who were unable to correct errors on their reports may have paid more for credit or been denied credit, employment or housing.

7.    The Bureau brings this action under the CFPA, 12 U.S.C. §§ 5531, 5536(a), 5564, 5565; the FDCPA, 15 U.S.C. §§ 1692a, 1692e, 1692*l*; FCRA, 15 U.S.C. § 1681s-2; and Regulation V, 12 C.F.R. §§ 1022.42-1022.43, to stop PRA's unlawful conduct, to obtain redress for harmed consumers and an appropriate penalty, and to obtain all other appropriate relief.

## JURISDICTION AND VENUE

8.    This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

9.    Venue is proper because PRA is located, resides, or does business in this district. 12 U.S.C. § 5564(f).

## PARTIES

10.    The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products and services under "Federal consumer financial law." 12 U.S.C. §§ 5491(a), 5563, 5564.

11.    The Bureau has independent litigating authority to enforce these laws. 12 U.S.C. § 5564(a), (b).

12.     PRA, a wholly owned subsidiary of publicly traded PRA Group, Inc., is one of the largest debt collectors in the United States. Its principal place of business is in Norfolk, Virginia. At all times relevant to this Complaint, PRA has transacted business in this district.

13.     At all times relevant to this Complaint, PRA has collected debt related to consumer-financial products or services and is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6); *see also* 12 U.S.C. § 5481(5) & (15)(A)(x).

14.     At all times relevant to this Complaint, PRA has been a "debt collector" within the meaning of the FDCPA. 15 U.S.C. § 1692a(6).

15.     At all times relevant to this Complaint, PRA has furnished consumer-account information to CRAs for inclusion in a consumer report and has been a "furnisher" within the meaning of FCRA and Regulation V. 12 C.F.R. § 1022.41(c). The consumer-report information or other account information that PRA has collected and furnished to CRAs is used or expected to be used in connection with a decision regarding the offering or provision of a consumer-financial product or service, and furnishing this information is a service offered or provided for use by consumers primarily for personal, family, or household purposes. This activity is a consumer-financial product or service under the CFPA. 12 U.S.C. § 5481(5), (15)(A)(ix).

## FACTUAL BACKGROUND

### The Bureau's Order Against PRA

16.     On September 9, 2015, the Bureau entered the Order against PRA concerning PRA's purchase and collection of debt.

17.     The Order resolved claims that PRA was making false or unsubstantiated representations to consumers about owing debts; misrepresenting that PRA intended to

prove debts if consumers contested them; filing misleading affidavits in debt-collection actions; misrepresenting that PRA had legally enforceable claims to debts outside of the applicable statutes of limitations; misrepresenting that attorneys had reviewed a consumer's debt or that collectors were calling on behalf of attorneys; and misrepresenting that litigation was planned, imminent, or even underway when PRA had not decided whether to file suit. The Bureau found that PRA's practices violated the CFPA and the FDCPA.

18.    The Order required PRA to pay at least $19,045,443 in consumer redress and an $8 million civil money penalty and to stop collections on over $3 million worth of judgments.

19.    The Order also prohibited PRA from (1) representing the amount or validity of a debt unless PRA could substantiate the representation; (2) selling debt; (3) threatening or filing collection lawsuits without an intent to prove the debt; (4) filing false or misleading affidavits in debt-collection actions; (5) making false or misleading representations; and (6) suing on Time-Barred Debt (as defined in the Order) or otherwise collecting Time-Barred Debt unless PRA complied with specified disclosure requirements.

20.    The Order included numerous conduct provisions to ensure that PRA would adhere to these prohibitions.

### PRA Represented the Validity or Amount of Unsubstantiated Debt

21.    Paragraph 116 of the Order prohibited PRA from "making any representation, expressly or by implication, that a Consumer owes a Debt to [PRA] or as to the amount of a Debt unless, at the time of making the representation, [PRA] can substantiate the representation."

22.     Paragraph 116 of the Order further provided that, whenever a consumer disputed the accuracy or validity of a debt, PRA could not make any further representations about the debt's validity or amount until it had reviewed (a) Original Account Level Documentation (OALD) "reflecting the Consumer's name and the claimed amount excluding any post Charge-off or post-judgment payments"; or (b) if the claimed amount was "higher than the charge-off balance or judgment balance," OALD "reflecting the Charge-off Balance or judgment balance and . . . an explanation of how the claimed amount was calculated and why such an increase [was] authorized by the agreement creating the Debt or permitted by law."

23.     Paragraph 16 of the Order defined OALD as "(a) any documentation that a Creditor, or that Creditor's agent (such as a servicer) provided to a Consumer about a Debt; or (b) a complete transactional history of a Debt created by a Creditor, or that Creditor's agent (such as a servicer); or (c) a copy of a judgment, awarded to a Creditor."

24.     From at least March 7, 2016 to September 9, 2020, PRA made at least tens of thousands of representations about an unsubstantiated debt whose amount or validity a consumer had disputed without reviewing the necessary OALD and information.

25.     For some of these disputed debts, PRA did not possess and thus did not review OALD reflecting the consumer's name and claimed amount at the time of the dispute, but nonetheless resolved the dispute in its favor and renewed collections of the unsubstantiated debt.

26.     For other of these disputed debts, PRA represented the amount or validity of the debt while the dispute was pending and PRA had not reviewed OALD to substantiate the debt.

6

**PRA Engaged in Legal Collections**
**Without Offering, Providing, or Possessing the Requisite Documents**

27.    Paragraph 15 of the Order defined "Legal Collection" as "any collection efforts made by [PRA's] internal legal department or a Law Firm to collect [PRA's] Debt, including but not limited to sending letters on Law Firm letterhead and filing Debt Collection Lawsuits."

28.    Paragraph 11 of the Order defined "Debt Collection Lawsuit" as "any lawsuit filed by [PRA], or on behalf of [PRA] by a Law Firm, against any Consumer for the purpose of collecting any Debt."

*PRA initiated Legal Collections without*
*offering to provide required documents.*

29.    Paragraph 119 of the Order prohibited PRA from initiating a Debt Collection Lawsuit unless it possessed (a) OALD reflecting the consumer's name, account number, and claimed amount; (b) OALD reflecting the terms and conditions applicable to the debt if the suit included a breach-of-contract claim; (c) a listing of prior debt owners; (d) "a certified or other properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the Debt at the time of Charge-off to each successive owner"; and (e) either a signed document evidencing the opening of the account or OALD "reflecting a purchase, payment, or other actual use."

30.    Paragraph 120(e) of the Order prohibited PRA from engaging in Legal Collections without previously providing a statement to the consumer that the consumer could request and would receive within 30 days all the documents PRA would need to possess, per paragraph 119 of the Order, when initiating a Debt Collection Lawsuit.

31.    From at least March 7, 2016 to September 9, 2020, PRA sent to millions of consumers, at the time of commencing Legal Collections, a form letter that offered only

7

some of the required documents. This letter did not offer "a certified or other properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the Debt at the time of Charge-off to each successive owner," and it offered to provide only "available" OALD, meaning it would not provide OALD reflecting the name and claimed amount if it did not possess such a document.

32.     After initiating Legal Collections, PRA did not make any other offer to consumers to provide the documents required under paragraph 119 of the Order.

### *PRA misrepresented that it would provide the specified documents within 30 days.*

33.     Paragraph 122 of the Order prohibited PRA from making any material misrepresentation or omission or assisting others in making any material misrepresentation or omission, expressly or by implication.

34.     The form letter that PRA has provided since at least March 7, 2016 when commencing Legal Collections has stated that, upon receipt of a written request from the consumer, PRA would provide within 30 days of request the documents enumerated in PRA's letter, including "either a signed account application or account statements reflecting a purchase, payment or other use of the account."

35.     On at least hundreds of occasions since March 7, 2016, PRA did not provide to the consumer all documents offered in its form letter within 30 days of receiving a consumer's written request for the documents.

36.     PRA's false representations about providing documents within 30 days impeded consumers' ability to determine whether a debt was truly owed and were likely to affect consumers' decision-making about whether and how to respond to allegedly outstanding debts.

### *PRA initiated Debt Collection Lawsuits with breach-of-contract claims without possessing OALD reflecting the debt's terms and conditions.*

37.     As noted above, paragraph 119(a) of the Order prohibited PRA from initiating a Debt Collection Lawsuit that included a breach-of-contract claim unless it possessed OALD reflecting "the contractual terms and conditions applicable to the debt."

38.     From at least March 7, 2016 to September 9, 2020, PRA initiated thousands of Debt Collection Lawsuits with a breach-of-contract claim when it did not possess OALD reflecting the contractual terms and conditions applicable to the debt.

### **PRA Improperly Collected on Time-Barred Debt**

39.     Paragraph 23 of the Order defined "Time-Barred" debt as "any Debt that is beyond an applicable statute of limitations for a Debt Collection Lawsuit."

### *PRA collected on Time-Barred Debt without providing the required disclosure.*

40.     Paragraph 126 of the Order required that, when PRA attempted to collect on Time-Barred Debt, it had to disclose to the consumer that it would not sue because of the age of the debt and, if appropriate, that it would not report the consumer's non-payment to the CRAs.

41.     When PRA purchased debt, it estimated the statute of limitations (SOL) that governed the debt, which it then tracked in its system (internally tracked SOL). PRA did not provide to the consumer the disclosure required by paragraph 126 of the Order unless the debt it was attempting to collect was beyond its internally tracked SOL.

42.    On numerous occasions from at least December 8, 2015, to September 9, 2020, PRA's internally tracked SOL date reflected that the debt was not beyond the statute of limitations when, in fact, the applicable statute of limitations had expired.

43.    On numerous occasions from at least December 8, 2015 to September 9, 2020, PRA attempted to collect Time-Barred Debt after the actual statute of limitations had expired without providing the disclosure required by paragraph 126 of the Order.

### *PRA sued on Time-Barred Debt.*

44.    Paragraph 125 of the Order prohibited PRA from suing on any Time-Barred debt through litigation or arbitration.

45.    Since at least December 8, 2015, PRA has initiated at least dozens of Debt Collection Lawsuits for Time-Barred Debt.

### PRA Failed to Timely Resolve,
### Conduct Reasonable Investigations of,
### or Maintain Reasonable Written Policies and Procedures for Disputes

46.    A "Direct Dispute" is "a dispute submitted directly to a furnisher (including a furnisher that is a debt collector) by a consumer concerning the accuracy of any information contained in a consumer report and pertaining to an account or other relationship that the furnisher has or had with the consumer." 12 C.F.R. § 1022.41(b).

47.    An "Indirect Dispute" is a dispute submitted to a CRA by a consumer concerning the completeness or accuracy of information provided by a furnisher to that CRA that is then forwarded to the furnisher pursuant to 15 U.S.C. § 1681i(a)(2).

48.    As a data furnisher, PRA must process, investigate, and resolve Direct Disputes and Indirect Disputes pursuant to FCRA, 15 U.S.C. § 1681s-2(a)(8), (b), and its implementing Regulation V, 12 C.F.R. §§ 1022.42–43.

10

### *PRA lacked a procedure to ensure*
### *timely resolution of Direct Disputes.*

49.    Since at least September 9, 2015, PRA has maintained a system designed to resolve Direct Disputes within 30 days of the date marked in PRA's system as the receipt date.

50.    But before January 2017, PRA recorded as the receipt date the date a Direct Dispute was entered into PRA's system, which was often several days after PRA in fact received the dispute.

51.    As a result, PRA's system failed to ensure that disputes were resolved within 30 days of the receipt date.

52.    Before January 2017, PRA had no other policy, procedure, or system in place to ensure that Direct Disputes were investigated and resolved within the period required by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1), which is typically 30 days from the date of receipt.

### *PRA failed to timely resolve or provide*
### *frivolous or irrelevant determination notices for Direct Disputes.*

53.    For numerous Direct Disputes submitted through January 2017 that consumers sent to PRA at an address permitted by 12 C.F.R. § 1022.43(c) and included the explanatory information and documentation required by 12 C.F.R. § 1022.43(d), PRA recorded in its system a receipt date that was later than the actual receipt date. As a result, for numerous of these Direct Disputes, PRA did not report the results of its investigation to the consumer before the expiration of the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1), which is typically 30 days.

54.    Since at least September 9, 2015, PRA has classified as "non-specific" Direct Disputes it has received from consumers with a notice that PRA determined did

not include sufficient information to identify the account or other relationship that was in dispute and the specific information that the consumer was disputing and an explanation of the basis for the dispute.

55.     With at least tens of thousands of Direct Disputes that PRA deemed "non-specific" since at least September 9, 2015, PRA neither (1) conducted an investigation of the dispute and reported its results to the consumer within the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1); nor (2) provided a notice to the consumer that indicated that PRA had determined that the dispute was "frivolous or irrelevant" and the reasons for such determination and that identified any information required to investigate the disputed information.

56.     In addition, until at least September 2016, PRA's operations for processing and recording Direct Disputes were insufficient to ensure that all Direct Disputes were entered into PRA's system of record. Between at least June 2015 and September 2016, PRA received but failed to input into its system over 2,500 properly addressed Direct Disputes ("the backlog"). As a result, PRA did not timely respond to and, when necessary, investigate these Direct Disputes.

57.     After PRA realized that it had failed to process the backlog, PRA determined that over 900 of the Direct Disputes in the backlog were "frivolous or irrelevant." But PRA did not, within five days of such a determination, provide consumers with a notice that indicated that PRA had determined the dispute was "frivolous or irrelevant" and the reasons for such determination and that identified the information required to investigate the disputed information.

58.     PRA also determined that, for over 1,500 of the backlogged Direct Disputes, PRA had an obligation to investigate because the dispute had been submitted

with a notice that included the explanatory information and documentation required by
12 C.F.R. § 1022.43(d). Because of its delayed processing, PRA failed to investigate and
report the results of these disputes to the consumers before the expiration of the
timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1).

### PRA failed to conduct reasonable investigations of Direct and Indirect Disputes.

59.    Since at least September 2015, PRA has resolved numerous Direct
Disputes and Indirect Disputes that it classified as "fraud/ID theft" in PRA's favor—
meaning that it found no fraud or identify theft—after considering only the following:
(1) the consumer did not submit a PRA-approved fraud document (like a police report or
notarized affidavit), (2) PRA possessed OALD reflecting the consumer's name and
claimed amount, and (3) PRA's records reflected that the consumer previously paid on
the debt.

60.    As described in paragraph 58 of this Complaint, PRA had an obligation to
investigate over 1,500 Direct Disputes in the backlog. Once it eventually processed these
disputes, PRA resolved them using a categorical methodology based on limited criteria,
including whether there was a judgment, the resolution of prior disputes, and whether
the consumer had made a payment on the debt.

61.    As a result of PRA's formulaic resolution of the backlog disputes and
numerous "fraud/ID theft" disputes, PRA conducted unreasonable investigations that
did not appropriately evaluate relevant information. For instance, PRA failed to (a)
consider whether it possessed other information supporting a finding of fraud or ID
theft; (b) evaluate reasons why the consumer may have made a payment on the debt

even if she did not owe it; or (c) or identify when the payment was made before the fraud or ID theft allegedly occurred.

## COUNT I: VIOLATING THE CFPA BY VIOLATING THE ORDER

62.    The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

63.    The Order is an "order prescribed by the Bureau" and is, therefore, a "Federal consumer financial law" under the CFPA. 12 U.S.C. § 5481(14).

64.    Under § 1036(a)(1)(A) of the CFPA, it is unlawful for covered persons, such as PRA, to "commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

65.    PRA violated the Order by:

a.    between at least March 7, 2016 and September 9, 2020, making representations about the amount or validity of unsubstantiated debt, in violation of paragraph 116 of the Order;

b.    between at least March 7, 2016 and September 9, 2020, engaging in Legal Collections without offering to provide to consumers the documents required by paragraph 120 of the Order;

c.    between at least March 7, 2016 and September 9, 2020, misrepresenting that it would provide within 30 days the documents specified in the form letter PRA sent when initiating Legal Collections, in violation of paragraph 122 of the Order;

d.    between at least March 7, 2016 and September 9, 2020, initiating Debt Collection Lawsuits with breach-of-contract claims without possessing OALD reflecting terms and conditions, in violation of paragraph 119 of the Order;

14

e.      between at least December 9, 2015 and September 9, 2020, failing to disclose when it was attempting to collect Time-Barred Debt, in violation of paragraph 126 of the Order; and

f.      between at least December 9, 2015 and September 9, 2020, initiating Debt Collection Lawsuits for Time-Barred Debt.

66.    By violating the Order's requirements, PRA committed acts or omissions that violated "Federal consumer financial law" and § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## COUNT II: DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF THE CFPA (Letters Sent to Consumers When Initiating Legal Collections)

67.    The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

68.    Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as PRA, from engaging in deceptive acts or practices. 12 U.S.C. § 5536(a)(1)(B).

69.    In the letters it sent to consumers when initiating Legal Collections, PRA expressly represented that it would provide the specified documents within 30 days. In numerous instances, these representations misled or were likely to mislead consumers because PRA did not provide or could not have provided all specified documents within 30 days of request.

70.    These representations were material because they were express and because they impeded consumers' ability to determine whether a debt was truly owed.

71.    PRA therefore engaged in deceptive acts or practices that violated §§ 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a); 5536(a)(1)(B).

**COUNT III: VIOLATIONS OF THE FDCPA**
**(Letters Sent to Consumers When Initiating Legal Collections)**

72.    The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

73.    Section 807 of the FDCPA prohibits debt collectors, such as PRA, from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Specifically, § 807(10) prohibits false representations or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

74.    In the letters it sent to consumers when initiating Legal Collections, PRA expressly represented that it would provide the specified documents within 30 days. In numerous instances, these representations were false or misleading because PRA did not provide or could not have provided all specified documents within 30 days of request.

75.    These representations were made in letters in which PRA attempted to collect debt and were therefore "in connection with the collection of any debt" within the meaning of the FDCPA. 15 U.S.C. § 1692e.

76.    PRA therefore used false, misleading, or deceptive representations or means in connection with the collection of debts, in violation of § 807 and 807(10) of the FDCPA. 15 U.S.C. §§ 1692e, 1692e(10).

**COUNT IV: DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF**
**THE CFPA**
**(Suing on Time-Barred Debt)**

77.    The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

78.     Section 1036(a)(1)(B) of the CFPA prohibits covered persons, such as PRA, from engaging in deceptive acts or practices. 12 U.S.C. § 5536(a)(1)(B).

79.     PRA sued numerous consumers on Time-Barred Debt.

80.     These lawsuits represented implicitly or explicitly, directly or by implication, that consumers had legally enforceable obligations to pay these debts.

81.     These representations were material because they were likely to affect consumers' choices about whether and how to respond to the allegedly outstanding debts.

82.     These representations were likely to mislead consumers because they were untrue; as these debts had passed the applicable statutes of limitations, the consumers did not have legally enforceable obligations to pay these debts.

83.     PRA therefore engaged in deceptive acts or practices that violated §§ 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a); 5536(a)(1)(B).

## COUNT V: VIOLATIONS OF THE FDCPA
### (Suing on Time-Barred Debt)

84.     The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

85.     Section 807 of the FDCPA prohibits debt collectors, such as PRA, from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Specifically, § 807(2)(A) prohibits false representations of the legal status of a debt, § 807(5) prohibits threats to take action that cannot legally be taken or that is not intended to be taken, and § 807(10) prohibits false

representations or deceptive means to collect or attempt to collect any debt. 15 U.S.C.
§ 1692e(2)(A), (5), (10).

86. PRA sued numerous consumers on Time-Barred Debt.

87. Because these lawsuits were intended to collect debt, they were "in
connection with the collection of any debt" within the meaning of the FDCPA. 15 U.S.C.
§ 1692e.

88. Whether a debt is legally enforceable concerns the character or legal status
of a debt.

89. The reasonable interpretation of these lawsuits, implicitly or explicitly,
directly or by implication, was that consumers had legally enforceable obligations to pay
these debts.

90. These representations were false or misleading because they were untrue;
as these debts had passed the applicable statutes of limitations, the consumers did not
have legally enforceable obligations to pay these debts.

91. PRA therefore used false, misleading, or deceptive representations or
means in connection with the collection of debts, in violation of §§ 807, 807(2)(A),
807(5), and 807(10) of the FDCPA. 15 U.S.C. §§ 1692e, 1692e(2)(A), (5), (10).

**COUNT VI: VIOLATING THE CFPA BY VIOLATING THE FDCPA**

92. The Bureau incorporates the allegations set forth in paragraphs 1-61 of this
Complaint.

93. Section 1036(a)(1)(A) of the CFPA makes it unlawful for covered persons
to "commit any act or omission in violation of a Federal consumer financial law." 12
U.S.C. § 5536(a)(1)(A).

94.    The FDCPA is a "Federal consumer financial law." 12 U.S.C. § 5481(12)(H), (14).

95.    PRA is a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

96.    Under § 814(c) of the FDCPA, any violation of the FDCPA is also deemed to be a violation of the CFPA. 15 U.S.C. § 1692*l*(c).

97.    By violating the FDCPA as described in Counts III and V, PRA violated the CFPA. 12 U.S.C. § 5536(a)(1)(A); 15 U.S.C. § 1692*l*(c).

### COUNT VII: VIOLATIONS OF FCRA
### (Untimely Resolution of Direct Disputes)

98.    The Bureau incorporates the allegations contained in paragraphs 1-61 of this Complaint.

99.    For Direct Disputes addressed pursuant to 12 C.F.R. § 1022.43(c) and that include the explanatory information and documentation required by 12 C.F.R. § 1022.43(d), section 623(a)(8)(E)(i)-(iii) of FCRA and its implementing provisions in Regulation V require a furnisher to complete a reasonable investigation of the dispute and report the results of the investigation to the consumer before the expiration of the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1), which is normally 30 days from receipt of the dispute, unless the furnisher reasonably determines that the dispute is "frivolous or irrelevant." 15 U.S.C. § 1681s-2(a)(8)(D)-(F); 12 C.F.R. § 1022.43(a)-(f).

100.    Section 623(a)(8)(F) of FCRA and its implementing provisions in Regulation V provide that, if a furnisher reasonably determines that a Direct Dispute is "frivolous or irrelevant," then the furnisher must notify the consumer of this determination. 15 U.S.C. § 1681s-2(a)(8)(F)(i)(I), (ii); 12 C.F.R. § 1022.43(f)(1)(i), (2). A furnisher must provide this "frivolous or irrelevant" notice not later than five business

days after making the determination, and the notice must include the reasons for such determination and identify any information required to investigate the disputed information. 15 U.S.C. § 1681s-2(a)(8)(F)(ii)-(iii); 12 C.F.R. § 1022.43(f)(2)-(3).

101.   For numerous Direct Disputes that PRA was obligated to investigate and where PRA recorded a receipt date that was later than the actual receipt date, PRA did not report the results of the investigation to the consumer before the expiration of the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1).

102.   With numerous Direct Disputes that PRA deemed "non-specific" since at least September 9, 2015, PRA neither reported the results of the investigation to the consumer before the expiration of the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1), nor provided a "frivolous or irrelevant" determination notice to the consumer within five business day after making the determination.

103.   With over 1,500 Direct Disputes in the backlog that PRA had an obligation to investigate, PRA failed to report the results of its investigations to the consumer before the expiration of the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1).

104.   With over 900 Direct Disputes in the backlog that PRA determined were "frivolous or irrelevant," PRA did not provide the consumer with the required "frivolous or irrelevant" notice within five days of the determination.

105.   PRA therefore violated § 623(a)(8)(E)(iii) of FCRA, 15 U.S.C. § 1681s-2(a)(8)(E)(iii), and Regulation V, 12 C.F.R. § 1022.43(e)(3), with numerous Direct Disputes recorded with the incorrect receipt date, backlogged Direct Disputes, and "non-specific" Direct Disputes for which PRA was required to report the results of the investigation before the expiration of the timeframe set by § 611(a)(1) of FCRA, 15 U.S.C. § 1681i(a)(1).

106.    PRA therefore violated § 623(a)(8)(F)(ii) and (iii) of FCRA, 15 U.S.C.

§ 1681s-2(a)(8)(F)(ii)-(iii), and Regulation V, 12 C.F.R. § 1022.43(f)(2)–(3), with

numerous "non-specific" and backlogged Direct Disputes where PRA was required to

provide a "frivolous or irrelevant" determination notice.

## COUNT VIII: VIOLATIONS OF FCRA
### (Failure to Conduct Reasonable Investigations)

107.    The Bureau incorporates the allegations contained in paragraphs 1-61 of

this Complaint.

108.    Sections 623(a)(8)(E)(i)-(ii) of FCRA and its implementing provisions in

Regulation V require a furnisher to conduct a reasonable investigation of a Direct

Dispute that includes a review of all relevant information provided by the consumer

with the dispute notice. 15 U.S.C. § 1681s-2(a)(8)(E)(i)-(ii); 12 C.F.R. § 1022.43(a),

(e)(1)-(2).

109.    Similarly, § 623(b)(1)(A)-(B) of FCRA requires a furnisher to conduct a

reasonable investigation of an Indirect Dispute that includes a review all relevant

information provided by the CRA. 15 U.S.C. § 1681s-2(b)(1)(A)-(B).

110.    Since at least September 2015, PRA has failed to conduct reasonable

investigations of numerous Direct and Indirect Disputes it classified as "fraud/ID theft"

by considering only that (1) the consumer did not submit a PRA-approved fraud

document, (2) PRA possessed OALD reflecting the consumer's name and claimed

amount, and (3) PRA's records reflected that the consumer previously paid on the debt.

111.    Between at least June 2015 and September 2016, PRA failed to conduct

reasonable investigations that included a review of all relevant information provided by

the consumer for the backlogged Direct Disputes that PRA had an obligation to investigate.

112.    PRA therefore violated § 623(a)(8)(E)(i)–(ii) and 623(b)(1)(A)–(B) of FCRA, 15 U.S.C. § 1681s-2(a)(8)(E)(i)–(ii), (b)(1)(A)–(B), by failing to conduct reasonable investigations of numerous Direct and Indirect Disputes.

## COUNT IX: VIOLATING THE CFPA BY VIOLATING FCRA

113.    The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

114.    Section 1036(a)(1)(A) of the CFPA makes it unlawful for covered persons to "commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

115.    The CFPA defines "Federal consumer financial law" to include most provisions of FCRA, including § 623 of FCRA, 15 U.S.C. § 1681s-2, and its implementing regulation, Regulation V. 12 U.S.C. § 5481(12)(F), (14).

116.    PRA is a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

117.    PRA's violations of § 623(a)(8) and (b)(1) of FCRA, described in Counts VII-VIII, constitute violations of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## COUNT X: VIOLATIONS OF REGULATION V
## (Failure to Maintain Reasonable Policies and Procedures)

118.    The Bureau incorporates the allegations contained in paragraphs 1-61 of this Complaint.

119.    Regulation V requires a furnisher to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a CRA. 12 C.F.R. § 1022.42.

120.    Since at least September 2015, PRA has failed to establish and implement reasonable written policies and procedures governing the investigation of fraud/ID theft disputes.

121.    Before January 2017, PRA failed to establish and implement reasonable written policies and procedures that ensured disputes were resolved within the period required by §§ 611(a)(1) and 623(a)(8)(E)(iii) and (b)(2) of FCRA, 15 U.S.C. §§ 1681i(a)(1), 1681s-2(a)(8)(E)(iii) and (b)(2).

122.    PRA therefore violated Regulation V, 12 C.F.R. § 1022.42, by failing to establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnished to CRAs.

### COUNT XI: VIOLATING THE CFPA BY VIOLATING REGULATION V

123.    The Bureau incorporates the allegations set forth in paragraphs 1-61 of this Complaint.

124.    Section 1036(a)(1)(A) of the CFPA makes it unlawful for covered persons to "commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

125.    The CFPA defines "Federal consumer financial law" to include most provisions of FCRA's implementing regulation, Regulation V. 12 U.S.C. § 5481(12)(F), (14).

126.    PRA is a "covered person" under the CFPA. 12 U.S.C. § 5481(16).

127.    PRA's violations of Regulation V described in Count X constitute violations of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

Accordingly, the Bureau requests that the Court:

a.  permanently enjoin PRA from committing future violations of the CFPA, FDCPA, FCRA, or any provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

b.  grant additional injunctive relief as the Court deems just and proper;

c.  order PRA to pay damages, restitution, redress, or other monetary relief to consumers, including the refund of money;

d.  order the disgorgement of PRA's ill-gotten gains or compensation for unjust compensation;

e.  award a civil money penalty under 12 U.S.C. § 5565(c);

f.  order PRA to pay the Bureau's costs incurred in connection with prosecuting this action; and

g.  award additional relief as the Court deems just and proper.

Dated:  March 23, 2023           Respectfully submitted,


ERIC HALPERIN
*Enforcement Director*

DEBORAH MORRIS
*Deputy Enforcement Director*

MICHAEL FAVRETTO
*Assistant Litigation Deputy*

<u>/s/ Kara K. Miller</u>
KARA K. MILLER (VA Bar No. 47821)
*Assistant Litigation Deputy*

JOANNA SHALLECK-KLEIN (CA Bar No. 275686)
*Senior Litigation Counsel*

RENÉE S. ORLEANS (MD Bar)
*Senior Litigation Counsel*

1700 G Street, NW
Washington, DC 20552
Email: kara.miller@cfpb.gov
Email: joanna.shalleck-klein@cfpb.gov
Email: renee.orleans@cfpb.gov
Tel.: (202) 435-7825 (Miller)
Tel.: (202) 435-9095 (Shalleck-Klein)
Tel: (202) 435-7271 (Orleans)
Fax: (202) 435-7329

Attorneys for Plaintiff
Consumer Financial Protection Bureau