**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>Defendant. | Case No. 2:23-cv-110-JKW-DEM |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 60(b) MOTION TO MODIFY JUDGMENT

Three years after asking the Court jointly with Plaintiff Consumer Financial Protection Bureau ("Bureau") for entry of the Stipulated Final Judgment and Order in this case ("Stipulated Judgment") (Dkt. No. 10), Defendant Portfolio Recovery Associates, LLC ("PRA") now asks the Court to terminate or, in the alternative, modify it. Def's Rule 60(b) Mot. Modify J. ("Motion to Modify") (Dkt. No. 12).

PRA's request comes after two consecutive orders—first a Bureau order in 2015, then the Stipulated Judgment in 2023—addressed its debt-collection practices dating back to 2011 and required it to redress consumers more than $33 million. Ignoring its long history of non-compliance, PRA points to its recent payment of required consumer redress and its unsubstantiated assertions of compliance since 2023 to argue that its continued adherence to the Stipulated Judgment is no longer equitable.

The Bureau opposes PRA's request. PRA has not met its burden to justify any of the relief it seeks under Federal Rule of Civil Procedure 60(b).

PRA first claims that it is entitled to Rule 60(b)(5) relief because responding to an increased total number of consumer disputes submitted orally has taken more of its resources than it anticipated three years ago and because the Bureau's priorities have shifted. PRA applies the wrong legal standard for evaluating a Rule 60(b)(5) motion, and its unsubstantiated allegations do not satisfy its threshold burden to show a substantial and unanticipated change in circumstances. Further, equity does not favor modification under Rule 60(b)(5), and PRA's requested relief is not suitably tailored.

PRA alternatively invokes Rule 60(b)(6), which permits relief only in "extraordinary circumstances." Notably ignoring the Supreme Court's most recent decision affirming that exacting standard, *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210-13 (2025), PRA offers nothing close to extraordinary circumstances.

PRA fails to establish its eligibility for termination or modification under either of the Rule 60(b) subsections it invokes, while its motion, in fact, illustrates the valuable consumer protections that the Stipulated Judgment imposes. PRA's plea is effectively a lament that "it is no longer convenient to live with [the Stipulated Judgment's] terms," which the Fourth Circuit has declared is not an adequate basis for granting a Rule 60(b) motion. *See Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 220 F.3d 241, 247 (4th Cir. 2000) (quoting *Rufo v. Inmates of Suffolk Cnty.*, 502 U.S. 367, 383 (1992)). PRA does not meet its burden to justify relief, and the Bureau respectfully submits that PRA's Motion to Modify should be denied.

## FACTUAL BACKGROUND

In 2015, PRA consented to a Bureau administrative order to resolve Bureau findings about PRA's unlawful debt-collection practices dating back to 2011. *In re Portfolio Recovery*

*Associates, LLC*, 2015-CFPB-0023, ¶¶ 2, 24-114 (2015) (the "2015 Order").[1] The 2015 Order included numerous conduct provisions to address Bureau findings of potential inaccuracies in the debts PRA collected and deceptive practices that PRA had engaged in when collecting those debts. *Id*. ¶¶ 115-28. After investigating PRA's compliance with the 2015 Order, the Bureau, in 2023, filed suit in this Court alleging that PRA had violated several provisions of the 2015 Order and, in addition, had engaged in dispute-resolution practices that violated the Fair Credit Reporting Act (FCRA) and its implementing Regulation V. Compl. ¶¶ 1-7, 16-127 (Dkt. No. 1). Rather than litigate these claims, PRA consented to a proposed stipulated judgment, and, simultaneously with the Bureau's filing of the Complaint and jointly with the Bureau, moved this Court to enter the Stipulated Judgment. Joint Mot. Entry Stipulated Final J. & Order (Dkt. Nos. 2, 3). After a hearing, this Court entered the Stipulated Judgment as proposed. Now, after more than a decade of alleged violations resulting first in the 2015 Order and then the 2023 Stipulated Judgment, PRA argues that the Stipulated Judgment should be terminated or modified only three years after it went into effect.

## I.      The 2015 Order

The Bureau's September 9, 2015 Order—to which PRA consented—resolved the Bureau's findings that PRA's debt-collection practices violated sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1), and sections 807, 807(2)(A), 807(5), and 807(10) of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e, 1692e(5)and 1692(e)(10). 2015 Order ¶¶ 24-114. At the core of

---

[1] The 2015 Order is available at *https://files.consumerfinance.gov/f/201509_cfpb_consent-order-portfolio-recovery-associates-llc.pdf*. PRA's stipulation and consent to the issuance of the 2015 order is available at *https://files.consumerfinance.gov/f/201509_cfpb_stipulation-portfolio-recovery-associates-llc.pdf*.

the Bureau's findings were concerns about the accuracy and validity of the debts PRA collected, *id.* ¶¶ 24-36, 63-66, 94-96, and the deceptive practices PRA used both in its regular collection activities and after it initiated the process to collect through court actions against consumers ("Legal Collections"), *id.* ¶¶ 40-59, 67-86, 97-111. The 2015 Order imposed several conduct provisions, including those that required PRA: (1) to have access to account-level documentation; (2) when a consumer disputed a debt, either orally or in writing, to review certain account-level documentation that confirmed particular information before PRA continued with collection; and (3) when engaging in Legal Collections, to possess and offer to provide the consumer certain documentation. *Id.* ¶¶ 116, 119-20.

## II.   The 2023 Stipulated Judgment

The Bureau's 2023 Complaint alleged that PRA had (1) violated numerous provisions of the 2015 Order, in violation of the CFPA, 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, and, in certain cases, also in violation of the FDCPA, 15 U.S.C. §§ 1692a, 1692e, 1692*l*; and (2) failed to timely respond to or reasonably investigate certain consumer disputes, in violation of FCRA, 15 U.S.C. § 1681s-2, and its implementing Regulation V, 12 C.F.R. §§ 1022.42-1022.43. Compl. ¶¶ 1-7, 26-127. In addition to requiring PRA to pay consumer redress and a civil money penalty, the Stipulated Judgment included numerous conduct provisions, some that reimposed, with various improvements and alterations, the provisions of the 2015 Order that the Bureau alleged PRA had violated; and others, in response to the FCRA and Regulation V violations, that imposed new requirements concerning PRA's dispute-resolution practices, including stating what would not constitute a reasonable investigation of a dispute alleging fraud or identity theft. Stip. J. ¶¶ 6-14 (conduct provisions), 21 (redress), 31 (CMP). A substantial portion of the conduct provisions were limited in duration to 7 years, including the one that requires PRA to

4

review certain account-level documentation for debts disputed orally or in writing, *id*. ¶ 7, while the remaining were permanent, *id.* ¶¶ 6, 8-14.

**ARGUMENT**

PRA claims that it is entitled to termination or its requested modifications under subsection (b)(5) of Rule 60 because of a "significant change" in factual conditions, and under subsection (b)(6) because "extraordinary circumstances justify relief." PRA both misapplies the applicable legal standards and fails to establish entitlement to relief under either prong.

## I. PRA has not shown a "significant change" and is not entitled to relief under Rule 60(b)(5).

Rule 60(b)(5) permits relief when applying a judgment "prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). As a threshold matter, PRA is not entitled to relief unless it provides sufficient proof that an unforeseen and substantial change in factual or legal circumstances has rendered continued compliance substantially more onerous, unworkable, or detrimental to the public interest. *See Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 827 (4th Cir. 2005). PRA cannot satisfy this burden, but if it could, the Court would then consider various factors, including (1) the circumstances leading to entry of the injunctive relief and the nature of the conduct sought to be prevented; (2) the length of time since entry of the injunction; (3) whether PRA has complied or attempted to comply in good faith with the injunction; (4) the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction; and (5) whether the objective of the Stipulated Judgment has been achieved and whether continued enforcement would be detrimental to the public interest. *Crutchfield v. U.S. Army Corps of Eng'rs*, 175 F. Supp. 2d 835, 844 (E.D. Va. 2001) (citing *Alexander v. Britt*, 89 F.3d 194, 197 (4th Cir. 1996)). *See also MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 553 (E.D. Va. 2009). These factors do not support Rule 60(b)

5

relief for PRA. Even if they did, any modifications to the Stipulated Judgment must be "suitably tailored to the changed circumstances," *Thompson*, 404 F.3d at 827 (quoting *Rufo*, 502 U.S. at 383), and the relief PRA seeks far exceeds that allowance.

PRA improperly asserts the wrong standard for how Rule 60(b)(5) relief should be evaluated here, misapplying two lines of cases stemming from the Supreme Court's decisions in *Bd. of Educ. of Okla. City v. Dowell*, 498 U.S. 237 (1991), and *Rufo v. Inmates of Suffolk Cnty.*, 502 U.S. 367 (1992). *First*, PRA argues that it is entitled to relief because "'(1) [] for a reasonable period of time (2) [it has] complied in good faith with the consent decree (3) to the point that the 'vestiges' of past unlawful behavior have been eliminated 'to the extent practicable,' and thus the purpose of the decree has been satisfied.'" Def.'s Mem. Supp. Mot. Modify J. at 9 ("Mot. to Modify Mem.") (Dkt. No. 13) (quoting *Alexander*, 89 F.3d at 200). This three-factor test emerged in *Dowell*, where the Supreme Court considered a consent decree in a long-running litigation regarding school desegregation. 498 U.S. at 240-44. These factors, the Court explained, were appropriate in that situation given "[c]onsiderations based on the allocation of powers within our federal system" and "'necessary concern for the important values of local control of public school systems.'" *Id*. at 248 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 611 F.2d 1239, 1245, n. 5 (Kennedy, J., concurring)).

However, the *Dowell* test is inapposite here. As an initial matter, as the Fourth Circuit noted in *Alexander v. Britt*, the *Dowell* factors may well be inapplicable to consent orders "designed to remedy ongoing wrong-doing" in which "the parties agree to cease ongoing illegal activity under specified terms and conditions," like the Stipulated Judgment here. *Alexander*, 89 F.3d at 199-200 (finding the court "need not definitively resolve the question" of the applicability of the *Dowell* standard "because in any event" the movant "could not satisfy that

6

standard"). Further, the Stipulated Judgment implicates no federalism concerns, as it binds a private party, not a state or local government. Finally, even if this standard were applicable, PRA fails to articulate what, at least in its view, the "past purpose" of the 2015 Order and the 2023 Stipulated Judgment was, much less prove that it has been "satisfied."

*Second*, PRA states that, if a party moving for relief under Rule 60(b)(5) carries its burden of establishing an unforeseen and substantial change in factual or legal circumstances that has rendered continued compliance substantially more onerous, unworkable, or detrimental to the public interest, then "a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" Mot. to Modify Mem. at 8 (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997))). This truncated analysis of Rule 60(b)(5) eligibility comes from *Rufo*, a case concerning conditions at a county jail, where the Supreme Court found that "flexibility" was appropriate for "institutional reform" consent decrees. 502 U.S. at 383, 393. Like in *Dowell,* the Court in *Rufo* explained that this standard was appropriate where the "'allocation of powers within our federal system' . . . require that the district court defer to local government administrators, who have the 'primary responsibility for elucidating, assessing, and solving the problems of institutional reform.'" *Rufo*, 502 U.S. at 392 (quoting *Dowell*, 498 U.S. at 248 and *Brown v. Bd. of Educ.*, 349 U.S. 294, 299 (1955)). Since *Rufo*, the Fourth Circuit has consistently applied the truncated Rule 60(b)(5) framework to orders that enjoin state or local governmental entities. *See, e.g.*, *L.J. v. Wilbon*, 633 F.3d 297 (4th Cir. 2011) (Baltimore, Maryland foster care system); *Thompson*, 404 F.3d at 824-25 (racial segregation and discrimination in Baltimore's public housing system); *Gilmore v. Hous. Auth. of Baltimore City*, 170 F.3d 428 (4th Cir. 1999) (lease terminations by the Housing Authority of Baltimore City); *Small v. Hunt*, 98 F.3d 789 (4th Cir. 1996) (conditions in North

Carolina prisons); *Johnson v. Robinson*, 987 F.2d 1043 (4th Cir. 1993) (conditions in Maryland prisons).

Conversely, the Stipulated Judgment here does not present these federalism considerations, meaning that this Court need not be so willing to allow modification. And even if *Rufo*'s truncated analysis were applicable here, it would be irrelevant, since PRA cannot satisfy its "burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383.

### a. PRA has not met its burden of establishing a significant change of circumstances.

As PRA acknowledges, it bears the burden of establishing that a "significant" change in factual circumstances warrants relief, and if it cannot satisfy that burden, it is not entitled to relief under Rule 60(b)(5). *See* Mot. to Modify Mem. at 8; *see, e.g.*, *Rufo*, 502 U.S. at 383; *Thompson*, 404 F.3d at 827. To meet its burden, PRA cannot rely on events that were "anticipated" when agreeing to the Stipulated Judgment. *Thompson*, 404 F.3d at 827 (citing *Rufo*, 502 U.S. at 385). Then, if PRA can clear the hurdle of establishing an unanticipated and substantial change in circumstances, it must "additionally show that the changed conditions make compliance with the [Stipulated Judgment] 'more onerous,' 'unworkable,' or 'detrimental to the public interest.'" *Thompson*, 220 F.3d at 247 (quoting *Small* 98 F.3d at 795 (quoting *Rufo*, 502 U.S. at 385)). This is a "heavy burden," and PRA's allegations "must be clearly substantiated by adequate proof." *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07cv612, 2008 WL 2557999, at *3 (E.D. Va. June 23, 2008).

PRA offers two purported changes in circumstances since 2023: (1) an increased total number of disputes submitted orally; and (2) the Bureau's shifted priorities. Mot. to Modify

Mem. at 9-13. With both, PRA falls far short of satisfying its burden, and this deficiency is dispositive, foreclosing Rule 60(b)(5) relief.

PRA asserts that the "proliferation" of "FinFluencers" and credit repair organizations has significantly increased the number of oral disputes that it receives, and then PRA summarily claims that no party could have anticipated this outcome.[2] As an initial matter, PRA has not established a meaningful increase in the total number of oral disputes or related costs since 2023. Notably, PRA provides the number of certain oral disputes received in 2024 and 2025 devoid of context, with no information about the quantity of disputes received in preceding years. Warren Decl. Supp. Mot. to Modify ¶ 15 ("Warren Decl.") (Dkt. No. 13-1). And to the extent that there was an increase in the total number of oral disputes, PRA has offered no proof—much less the substantiated proof required—that the change was not anticipated or foreseeable when PRA agreed to the Stipulated Judgment in March 2023. Rather, to explain "FinFluencers," PRA offers an article that was published months *before* PRA agreed to the Stipulated Judgment.[3] Thus, PRA has not cleared its initial hurdle of showing a substantial and unanticipated change in circumstances since entry of the Stipulated Judgment.

---

[2] The only conduct provision directly implicated by PRA's receipt of oral disputes is the one that prohibits PRA from continuing to collect on a disputed debt unless it has reviewed particular account-level documentation confirming certain information. *See* Stip. J. ¶ 7(c). In addition, PRA claims that its recordkeeping obligations (separate from the conduct provisions) are increasingly burdensome because of the increase in oral disputes. *See id.* ¶¶ 48-49.

[3] In footnote 1 of its Motion to Modify, PRA cites to *Social Media Finfluencers—Who Should You Trust?*, Cal. Dept. of Fin. Prot. & Innovation, *https://dfpi.ca.gov/news/insights/social-media-finfluencers-who-should-you-trust/* (last visited Apr. 8, 2026). PRA's citation does not include the article's publication date—October 5, 2022. *See https://dfpi.ca.gov/news/insights/?searchStudioQuery=&isGrid=false&facets=&orderBy=&start=90&model=DFPI* (last visited Apr. 8, 2026) (cataloging the California Department of Financial Protection & Innovation's "Consumer Insight" articles and identifying the *Finfluencers* publication date of October 5, 2022).

But even if PRA could somehow satisfy the first part of its burden, it fails to prove that compliance has become substantially more onerous or unworkable or detrimental to the public interest. It provides no evidence—again, much less substantiated evidence—that the burden from an increased number of oral disputes is unworkable or substantially more onerous for an operation with PRA's resources. Further, PRA's own motion shows that the continuation of its obligations is in the public interest: According to PRA, the "substantiation" percentage for oral disputes has stayed constant at 5%, Mot. to Modify Mem. at 4, 6, 10, so any increase in oral disputes has resulted in an increase in the total number of substantiated, non-frivolous disputes. Given that the Stipulated Judgment seeks to prevent PRA from collecting invalid debts or the wrong amount, the purportedly changed circumstances that PRA offers actually demonstrate the value of the requirement relating to oral disputes—PRA is identifying more consumers whose disputes are substantiated and, thus, whose alleged debts may be invalid or inaccurate and should not be collected.

PRA also incorrectly claims that the Bureau's current priorities justify its requested modification. In fact, as described in the Bureau's most recent Semi-Annual Report, the Bureau's current enforcement priorities include consumer debt-collection violations of the FDCPA and Regulation F and data-furnishing violations of FCRA and Regulation V. *See Semi-Annual Report of the Consumer Financial Protection Bureau, October 2024 – December 2025* at 38 (March 31, 2026).[4] This matter falls within those priorities.[5] Indeed, the Bureau opposes PRA's requested

---

[4] The Bureau's Semi-Annual Report is available at *https://www.consumerfinance.gov/data-research/research-reports/semi-annual-report-october-2024-december-2025/* (last visited Apr. 8, 2026). It was made public after PRA filed its Motion to Modify.

[5] PRA cited to an April 2025 Executive Order to argue that the Stipulated Judgment creates "inappropriate . . . 'anti-competitive restraints.'" Mot. to Modify Mem. at 12-13 (citing Exec. Order No. 14267, 90 Fed. Reg. 15629 (Apr. 9, 2025)). That Executive Order "commence[d] the

termination and modification of the Stipulated Judgment here. And in any event, administrations routinely change priorities, as PRA well knew when consenting to the Stipulated Judgment, and PRA's opinion about the best use of Bureau resources carries no weight in this Court's analysis under Rule 60(b).[6]

Finally, under a heading of changed circumstances, PRA offers a third situation that has not, in fact, changed: PRA claims that it is burdensome to comply with the requirements that it possess, offer to provide, and provide to consumers certain documents when engaging in Legal Collections. Mot. to Modify Mem. at 11-12; *see* Stip. J. ¶¶ 7(g), 9-12. In support, PRA proffers that, in 2024 and 2025, it provided consumers over 23,000 of the required packets, with approximately 10% of those being duplicate requests. Warren Decl. ¶ 17. While revealing some perhaps redundant efforts, this evidence predominately shows that a significant number of consumers are receiving the relief intended by the Stipulated Judgment, not that there has been a change in circumstances warranting Rule 60(b)(5) relief.

---

process for eliminating anti-competitive *regulations*" and directed agency heads to review "*regulations* subject to rulemaking authority." 90 Fed. Reg. 15629 (emphasis added). It has no bearing on a final judgment entered by a court. PRA then suggested that the Bureau's "Interpretive Rules, Policy Statements, and Advisory Opinions; Withdrawal" rule from May 2025 shows that the Stipulated Judgment is "in conflict with the Bureau's current directives." Mot. to Modify Mem. at 13. As PRA notes, that rule did state that the Bureau was "reducing its own enforcement to only those areas statutorily required." 90 Fed. Reg. 20084, 20085 (May 12, 2025). However, PRA then missed the point: with alleged violations of the FDCPA and FCRA, this action falls into that category.

[6] PRA inappropriately cites to *Alexander*, 89 F.3d at 197, in support of its argument that the Bureau's and the President's current priorities are the "type of changed circumstances under which *Alexander* approved terminating injunctions and consent orders." Mot. to Modify at 13. Changing governmental priorities are not even addressed as a factor in *Alexander*, which, as previously explained, applies the *Dowell* standard, which is not applicable here.

11

In sum, the evidence PRA provides falls far short of meeting its burden to establish a substantial, unforeseen change in factual circumstances that is unworkable, substantially more burdensome, or not in the public interest. PRA's quest for Rule 60(b)(5) relief should end there.

### b. The Other Equity Factors Also Favor Maintaining the Stipulated Judgment.

Even if PRA could satisfy its burden of establishing changed circumstances, the other equity factors weigh in favor of maintaining the Stipulated Judgment as entered.

As to the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented, the Stipulated Judgment addresses concerns about the accuracy and validity of debts that PRA collected and PRA's deceptive practices in connection with Legal Collections. The provisions that PRA now claims create the burden warranting Rule 60 relief directly relate to these specific concerns. The Stipulated Judgment seeks to prevent PRA from collecting invalid and inaccurate debt by requiring PRA to confirm certain account-level information when a consumer disputes a debt; and it requires that PRA provide consumers confronted with potential legal action with critical documentation that can help protect them from being influenced by any potentially deceptive statements. *See* Stip. J. ¶¶ 7(c), 7(g)-(h), 9-11. Regarding the accuracy and validity of debts, PRA's own motion confirms that the increased number of oral disputes increases the total number of substantiated disputes, thus increasing the likelihood that PRA can identify when it is seeking to collect an invalid debt or an inaccurate amount. *See* Mot. to Modify Mem. at 4, 6, 10 (stating that the "substantiation" percentage for oral disputes has stayed constant at 5%). This is a significant consumer benefit. And as to PRA's practices relating to Legal Collections, PRA's motion shows that tens of thousands of PRA's consumers facing a potential lawsuit have received, as a result of the Stipulated Judgment, documentation that can help them evaluate the validity of their alleged debts and PRA's ability

to obtain legal relief. *See* Warren Decl. ¶ 17; Stip. J. ¶¶ 7(g)-(h), 9-11. In other words, these provisions offer important and valuable consumer protections, and while they may impose costs on PRA, those costs are what PRA agreed to when consenting to the Stipulated Judgment.

Further, the Stipulated Judgment in this case resulted from the Bureau's allegations that PRA had violated numerous provisions of the 2015 Order—which had addressed prior Bureau findings about PRA's unlawful debt collection practices dating back to at least 2011—and also that PRA had engaged for years in dispute-resolution practices that violated FCRA and Regulation V. This context provides a reasonable concern that, if PRA obtained its desired relief, it may collect on invalid debt, seek an amount not owed, engage in deceptive Legal Collections practices, fail to conduct reasonable investigations for consumers alleging fraud or ID theft, or engage in other conduct currently prohibited under the Stipulated Judgment.

PRA argues that it has generally complied with the Stipulated Judgment in the last three years, but it offers only unsupported pronouncements, which fall far below the required "clearly substantiated proof." *See Buffalo Wings*, 2008 WL 2557999, at *3 (applying a "clear and convincing" evidentiary standard).[7] But even accepting PRA's assertion, what that means is that consumers have benefited from the Stipulated Judgment's protections for three years. Now, PRA seeks to eliminate those agreed-upon protections without offering how, absent them, PRA would

---

[7] The Bureau's Consumer Complaint Database, publicly available at https://www.consumerfinance.gov/data-research/consumer-complaints, includes over 32,000 complaints regarding PRA received since March 24, 2023, with over 9,400 labeled as "attempts to collect debt not owed"; over 4,400 labeled as "took or threatened to take negative or legal action"; and over 3,700 labeled as "false statements or representation." *See* *https://www.consumerfinance.gov/data-research/consumer-complaints/search/?chartType=line&company=Portfolio%20Recovery%20Associates%2C%20LLC&dateInterval=Month&date_received_max=2026-04-05&date_received_min=2023-03-24&lens=Product&searchField=all&subLens=issue&tab=Trends* (last visited Apr. 8, 2026). While consumer complaints do not, by themselves, establish violations of law, the sheer number raises concerns about PRA's compliance with the Stipulated Judgment.

ensure that it does not collect invalid debt or an inaccurate amount or engage in deceptive collection practices.

PRA also repeatedly suggests that it is somehow deserving of relief because some of the Stipulated Judgment's provisions exceed federal law. This is not a basis for Rule 60(b)(5) relief. PRA knowingly consented to be bound by those terms, and "it is well established that 'parties may agree to provisions in a consent decree which exceed the requirements of federal law.'" *Wilbon*, 633 F.3d at 310 (quoting *Suter v. Artist M.*, 503 U.S. 347, 354 n. 6 (1992)).

Despite the short time that the Stipulated Judgment has been in effect, PRA now seeks to free itself from abiding by the consumer protections it imposes, not because these requirements are not beneficial to consumers—indeed, they are—but because they impose costs. But those costs were part of the deal when PRA agreed to the Stipulated Judgment, and applying these protections prospectively remains equitable.

### c.  PRA seeks modifications that are not suitably tailored.

Any modifications to a judgment under Rule 60(b)(5) must be "suitably tailored to the changed circumstance." *Thompson*, 404 F.3d at 827 (quoting *Rufo*, 502 U.S. at 383).[8] "A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires." *Thompson*, 404 F.3d at 831 (quoting *Rufo*, 502 U.S. at 391).

To the extent that PRA has established a substantial and unanticipated change in circumstances for oral disputes, which it has not, any modification to the Stipulated Judgment should be limited to the small number of provisions implicated by these disputes—the definition of a "Covered Dispute," the conduct provision requiring PRA to review account-level

---

[8] Even if the *Rufo* truncated analysis were applicable here, PRA would still be limited to modifications that are "suitably tailored to the changed circumstance." 502 U.S. at 383.

documentation for Covered Disputes, and the recordkeeping requirements as they relate to Covered Disputes. *See* Stip. J. ¶¶ 5(j), 7(c), 48-49.[9] In no way would wholesale termination of the Stipulated Judgment be justified.

## II. PRA does not present the extraordinary circumstances required under Rule 60(b)(6).

As an alternative to Rule 60(b)(5), PRA attempts to rely on the "catchall" of Rule 60(b)(6)—"any other reason that justifies relief." The grounds for relief under Rule 60(b)(6) are "mutually exclusive" from the grounds under other Rule 60(b) prongs, and relief under 60(b)(6) is available only when 60(b)(1)-(5) are inapplicable. *United States v. Williams*, 56 F.4th 366, 373 (4th Cir. 2023) (citing *Kemp v. United States*, 596 U.S. 528, 533 (2022) and *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993)).

The Supreme Court recently affirmed in *BLOM Bank SAL v. Honickman* that "[r]elief under Rule 60(b)(6) requires extraordinary circumstances" and is available only in "narrow circumstances." 605 U.S. at 210-13 (2025). *See, e.g.*, *Moses v. Joyner*, 815 F.3d 163, 168 (4th Cir. 2016). Remarkably, PRA fails to cite *BLOM* in its Rule 60(b)(6) argument or note the limited nature of the relief it allows. Instead, PRA improperly claims that the *Dowell* factors applied by the Fourth Circuit in *Alexander* govern. As previously discussed, the *Dowell* standard is inapposite here. In addition, *Alexander* does not concern a Rule 60(b)(6) motion, making no mention of the "other reason that justifies relief" provision and not addressing the "extraordinary circumstances" requirement.

---

[9] PRA seeks modification to a number of provisions that are unrelated to the alleged changed circumstances. These unrelated provisions concern the definition of "collection," Stip. J. ¶ 5(g); Legal Collections activities, *id*. ¶¶ 9-11; reasonable investigations of fraud/ID theft disputes, *id*. ¶ 13(b); the termination date for permanent conduct provisions, *id*. ¶¶ 6, 8-14; audits, *id*. ¶ 15(i); redress, *id*. ¶¶ 21–25, 27–30; and recordkeeping requirements for documents related to compliance with the entire judgment, *id*. ¶¶ 48-49.

PRA fails to even attempt to establish that it meets the threshold requirement that its Rule 60(b)(6) request is "mutually exclusive" of its Rule 60(b)(5) request or that 60(b)(1) through (5) are "inapplicable." *See Kemp*, 596 U.S. at 533 (stating that Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable").

Even if PRA's request is eligible for consideration under Rule 60(b)(6), PRA offers only two justifications that do not come close to meeting the demanding "extraordinary circumstances" standard. *First*, PRA regurgitates its unsubstantiated claims about good-faith past compliance with the Stipulated Judgment. Even taking them as true, complying with an agreed-upon stipulated judgment for only three years is not "extraordinary," nor is merely adhering to a judgment to which PRA consented. *Second*, PRA offers the unsubstantiated and conclusory claim that its adherence to the Stipulated Judgment for three years has eliminated "vestiges" of the alleged violations that resulted first in the 2015 Order and then in the 2023 Stipulated Judgment. That argument just shows that the Stipulated Judgment's provisions are working as intended to eliminate continued violations, which is not an "extraordinary circumstance," but rather a reason to maintain them.

Finally, PRA notes two cases where district courts recently granted motions submitted by the Bureau to terminate judgments. *See CFPB v. Trident Mortgage Co. LP*, No. 2:22-cv-02936, Dkt. No. 17 (E.D. Pa. June 2, 2025); *United States v. Trustmark Nat'l Bank*, No. 2:21-cv-02664, Dkt. No. 29 (W.D. Tenn. May 21, 2025). In both matters, the Bureau moved to terminate under provisions in the judgments permitting modifications; neither of those motions was brought under Rule 60(b)(6). *See Trident*, Unopposed Mot. Terminate Consent Order, Dkt. No. 16 (May 23, 2025); *Trustmark*, Unopposed Mot. Terminate Consent Order, Dkt. No. 28 (May 20, 2025).

16

These cases have no bearing here, and certainly do nothing to show that PRA is confronting

extraordinary circumstances.

## CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that the Court deny

Defendant's Rule 60(b) Motion to Modify Judgment.

Dated:  April 8, 2026                              Respectfully submitted,

                                                   DEBORAH MORRIS
                                                   *Acting Enforcement Director*

                                                   */s/ Kara K. Miller*
                                                   KARA K. MILLER (VA Bar No. 47821)
                                                   *Assistant Litigation Deputy*
                                                   JOANNA SHALLECK-KLEIN (CA Bar No. 275686)
                                                   *Senior Litigation Counsel*
                                                   RENÉE S. ORLEANS (MD Bar)
                                                   *Senior Litigation Counsel*

                                                   Consumer Financial Protection Bureau
                                                   1700 G Street, NW
                                                   Washington, DC 20552
                                                   Email: kara.miller@cfpb.gov
                                                   Email: joanna.shalleck-klein@cfpb.gov
                                                   Email: renee.orleans@cfpb.gov
                                                   Tel.: (202) 435-7825 (Miller)
                                                   Tel.: (202) 435-9095 (Shalleck-Klein)
                                                   Tel.: (202) 435-7271 (Orleans)
                                                   Fax: (202) 435-7329

                                                   **Attorneys for Plaintiff**
                                                   **Consumer Financial Protection Bureau**

## **CERTIFICATE OF SERVICE**

I certify that on this 8th day of April, 2026, a true and correct copy of the foregoing was served on all counsel of record via Notice of Electronic Filing by filing with the Court's CM/ECF system.

/s/ Kara K. Miller
KARA K. MILLER (VA Bar No. 47821)
Assistant Litigation Deputy
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Email: kara.miller@cfpb.gov
Tel.: (202) 435-7825
Fax: (202) 435-7329

Attorney for Plaintiff
Consumer Financial Protection Bureau